UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD D. HESTLE,

    PETITIONER,

VS.                                                    CIVIL NO.: 05-40245
                                                    CRIM NO.: 02-50030

                                                    HON. PAUL V. GADOLA
UNITED STATES OF AMERICA,           HON. STEVEN D. PEPE

    RESPONDENT.
_____/

# REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

      This matter is before the Court on Petitioner Gerald D. Hestle's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," filed on August 1, 2005, (hereinafter "Petitioner's Motion"). On September 12, 2005, Petitioner filed a "Memorandum of Law in Support of Motion Pursuant to 28 U.S.C. § 2255," (hereinafter "Petitioner's Brief"). Respondent, the United States of America, filed a "Answer and Brief in Response to Motion Under 28 U.S.C. § 2255," on September 22, 2005, (hereinafter "Respondent's Brief"). This matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)B. For the reasons stated below it is recommended that Petitioner's § 2255 Motion be **DENIED.**

1

## II. FACTS AND PROCEDURAL HISTORY

The Sixth Circuit Court of Appeals summarized the facts surrounding Petitioner's arrest:

> Law enforcement, including two ATF agents, seized 65.44 grams of crack cocaine from the home of Defendant's brother, Cedric Hestle, in Flint, Michigan. Five persons were present in the home when the raid occurred: Defendant, his brother Cedric, a female named Pamela Simmons, her infant grandchild, and an elderly male named Eddie Simmons. Defendant was alone in a first floor room adjoining the room where the larger quantity of crack cocaine was located. The room in which Defendant was located contained a small amount of crack cocaine, drug packaging materials, .22 caliber ammunition, and gun cleaning supplies. A digital scale was located elsewhere on the first floor. The agents seized these items and then, after Defendant waived his Miranda rights, listened as Defendant admitted the crack cocaine in the house belonged to him.

*United States v. Hestle*, 107 Fed. Appx. 500, 501, 2004 WL 1800903, at *1 (6th Cir. 2004). The Government's Brief describes the ensuing procedural history and additional facts as presented by the government on direct appeal:

> On May 8, 2002, Mr. Hestle and his brother, Cedric Hestle, were charged in a two-count indictment. Both were charged in count one with possession with intent to distribute 50 grams or more of cocaine base in the form of crack and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. § 2. In addition, both were charged in count two with being felons in possession of firearms in violation of 18 U.S.C. §§ 922(g), 924(a)(2), and 2. (R. 1: Indictment).
>
> As noted on the indictment, Gerald Hestle had the following previous felony convictions (including three felony drug-offense convictions):
>
> > 1. in 1989 in Detroit Recorders Court in the State of Michigan of Possession of Cocaine,
> >
> > 2. in 1994 in Detroit Recorders Court in the State of Michigan of Carrying a Concealed Weapon,
> >
> > 3. in 1997 in Detroit Recorders Court in the State of Michigan of Possession of Cocaine, and
> >
> > 4. in 2000 in Wayne County Circuit Court in the State of Michigan of Possession of Cocaine.
>
> (R. 1: Indictment). As petitioner already had two or more felony drug offense-convictions and possessed with intent to distribute 50 grams or more of

cocaine base in the form of crack, he was facing a mandatory life term pursuant to 21 U.S.C. § (b)(1)(A)(iii). Petitioner was notified of this penalty in the Acknowledgment of Indictment, signed at arraignment, and through the Penalty Enhancement Information.[1] (R. 13: Acknowledgment and R. 28: Penalty Enhancement Information).

The defendant went to trial on August 13, 14, and 16, 2002. He was found guilty of count one with a special jury verdict finding that he was responsible for 50 grams or more of crack cocaine. He was acquitted as to count two. (R. 30: Verdict form). On December 12, 2002, defendant was sentenced to a term of life imprisonment. (R. 38 and Sentencing, 12/12/02 at Tr. 30-34).

<u>Evidence presented during the trial</u>

On March 19, 2002, agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF) executed a search warrant at 2033 Ferris Avenue, Flint, Michigan. (Todd Bowden, Vol. 2, 8/14/02 at Tr. 213-75 and Mark Kloostra, Vol. 3, 8/16/02 at Tr. 331-38). Music was playing very loudly inside of the house and the occupants did not hear the agents announcing their presence or forcing entry into the home. (Bowden, Vol. 2, 8/14/02 at Tr. 225-26). After the agents were inside the house, Cedric Hestle (defendant's brother) saw the agents and swept crack cocaine off the table in the dining room. (Bowden, Vol. 2, 8/14/02 at Tr. 226-29). This crack cocaine was recovered by the agents. (Bowden, Vol. 2, 8/14/02 at Tr. 245-58 and Sheila Smith,

Vol. 2, 8/14/02 at Tr. 301-06).

The defendant, Gerald Hestle, was on a couch in the adjoining room. This room included the front door to the house. No one else was in that room. (Kloostra, Vol. 3, 8/16/02 at Tr. 331-32 and 346-47 and Bowden, Vol. 2, 8/14/02 at Tr. 223, 229-31). Also present in the home were a senior citizen, Eddie Simmons, and a woman, Pamela Simmons, holding a baby. (Bowden, Vol. 2, 8/14/02 at Tr. 223-29).

The room occupied by Gerald Hestle was approximately eight by twelve feet in size. Besides the couch, the room contained a stereo, stereo speakers and a box. Crack cocaine and drug packaging materials were sitting clearly visible on top of one of the stereo speakers. (Bowden, Vol. 2, 8/14/02 at Tr. 232-35 and 294, Kloostra, Vol. 3, 8/16/02 at Tr. 358-59, and Smith, Vol. 2, 8/14/02 at Tr. 301-05). Packaging materials, .22 caliber ammunition, and gun cleaning supplies were in the box located on the floor at the base of the stereo.[2] Also seized from the first floor were a Vector

---

[1]As the defendant and his attorney did not want this Information filed until the complete breakdown of plea negotiations, it was not filed until August 13, 2002. (Vol. 1, 8/13/02 at Tr. 5-10/JA and R. 28: Penalty Enhancement Information).

[2]A Ruger .22 caliber semi-automatic pistol was also located in a closet in the upstairs southeast bedroom. This pistol was loaded with the same brand of .22 caliber ammunition as

3

500 digital scale, along with a plate and single-edge razor blade. (Bowden, Vol. 2, 8/14/02 at Tr. 255-56). No identifiable fingerprints were found on the scale. (Bowden, Vol. 2, 8/14/02 at Tr. 273-74).

A total of 65.44 grams of crack cocaine (excluding the packaging) was seized from the first floor of the house. (Exhibit 3 weighed .52 grams. Exhibit 9 weighed 63.85 grams. Exhibit 11 weighed .85 grams. Exhibit 13A weighed .22 grams.) (Bowden, Vol. 2, 8/14/02 at Tr. 253-57 and Sheila Smith, Vol. 2, 8/14/02 at Tr. 301-06).

Petitioner was unemployed. (Randy Pomaville, Vol. 2, 8/14/02 at Tr. 296-300.) He was using the address of 2033 Ferris Avenue, Flint, Michigan on his Michigan Personal Identification card. His brother, Cedric, used the address of 2535 West Grand Boulevard, Apartment 113, Detroit, Michigan on his Michigan Personal Identification card. (Kloostra, Vol. 3, 8/16/02 at Tr. 333-36 and Bowden, Vol. 2, 8/14/02 at Tr. 259-60). After waiving his Miranda rights, petitioner admitted that the crack cocaine in the house belonged to him. This was heard by at least two federal agents. (Bowden, Vol. 2, 8/14/02 at Tr. 266-68 and 290 and Kloostra, Vol. 3, 8/16/02 at Tr. 331-33).

Petitioner testified during the trial. (Hestle, Vol. 3, 8/16/02 at Tr. 386-412). He said that he had arrived at the house about an hour before the police executed the search warrant (*Id.* at Tr. 392); that the cocaine belonged to his brother [Cedric Hestle] (*Id.* at Tr. 397); and that he gave the incriminatory statement to the police because he was going to take the case for his brother (*Id.*).

Upon cross-examination, petitioner said that he had given an untrue address [2033 Ferris Avenue, Flint] to the Michigan Secretary of State for use on his identification (*Id.* at Tr. 398-400); admitted that his brother was using a Detroit address (*Id.* at Tr. 400); admitted that he had more felony convictions than his brother and that he would have been in more trouble than his brother for admitting to the police that the cocaine belonged to him (*Id.* at Tr. 400-403); acknowledged that the cocaine in the house was in plain view (*Id.* at Tr. 404-05 and 410); acknowledged that he had been unemployed since November 2001, only briefly holding positions at McDonald's restaurant and as a billing clerk during the last five years (*Id.* at Tr. 406-09); and admitted that he had used two false names (*Id.* at 410-12).

Pamela Simmons testified for petitioner, too. (Simmons, Vol. 3, 8/16/02 at Tr. 363-85). She said that the defendant had not been staying at the house [where the drugs were seized] for long periods of time and had only arrived approximately 45 minutes before the police executed the search warrant. (*Id.* at Tr. 366-68). She said that she had not seen the defendant handling the cocaine or drug paraphernalia. She

---

was found near the defendant. (Bowden, Vol. 2, 8/14/02 at Tr. 235-45, 259 and John Miller, Vol. 2, 8/14/02 at Tr. 307-318).

4

also said that she did not know what Cedric Hestle was doing with the cocaine. (*Id.* at Tr. 369).

On cross-examination, Ms. Simmons admitted that she used crack cocaine; that it had been sitting in the open when the police arrived at the house; and that it "apparently" was there to be sold. (*Id.* at Tr. 369-72). She took issue with agent testimony that the cocaine was found in the rooms occupied by the defendant and his brother. (*Id.* at Tr. 373). She said that she was not familiar with the guns seized from the house. (*Id.* at 381-83).[3]

### III. <u>STANDARD OF REVIEW</u>

To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect of influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Section 2255 requires that a district court hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law regarding the petitioner's case "unless the motion and the file records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995). Although, the magistrate judge previously assigned to this case initially scheduled an evidentiary hearing, the undersigned finds that after viewing the previously sealed documents regarding Petitioner's co-defendant, an evidentiary hearing is no longer necessary as there are no factual issues to be resolved.

---

[3]Respondent's brief at pages 2-7.

## IV. ANALYSIS

Petitioner's Brief presents five arguments. First, he argues that his rights under the Equal Protection Clause were violated pursuant to the holdings in *Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003) and *Batson v. Kentucky*, 476 U.S. 79, 96-98, (1986); and further, that his counsel was ineffective for not effectively asserting these violations. Second, he argues that his counsel was ineffective for failing to call his co-defendant and brother, Cedric Hestle, as a material witness. Third, he argues that his appellate counsel was ineffective for failing to raise a *Blakely*[4] challenge, and for failing to file a writ of certiorari to the United States Supreme Court. Fourth, he alleges prosecutorial misconduct because the government was aware of Cedric Hestle's guilty plea relating to the drugs in Petitioner's case. Fifth, Petitioner alleges another claim of ineffective assistance of counsel for failure to object to Petitioner's life sentence under 18 U.S.C. § 3559(c).

### A. PROCEDURAL DEFAULT

On direct appeal, Petitioner raised the following two issues: "(1) whether the district court clearly erred in finding that the prosecutor's use of two peremptory challenges against African-American venire men did not constitute purposeful discrimination; and (2) whether the evidence was sufficient to sustain Defendant's conviction for possession with intent to distribute fifty or more grams of crack cocaine?" *Hestle*, 2004 WL 1800903, at *1. "[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct 1584, 1593 (1982) (citations omitted).

---

[4]*Blakely v. Washington*, 542 U.S. 296 (2004).

Petitioner did not raise a prosecutorial misconduct claim regarding the government's alleged awareness of Cedric Hestle' guilty plea relating to the drugs in Petitioner's case. Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998) (citation omitted). Where Petitioner "has not demonstrated cause, it is unnecessary to determine if he has shown prejudice." *Eaddy v. United States*, 20 Fed. Appx. 463, 464, 2001 WL 1176382, at *1 (6th Cir. 2001) (unpublished) (citing *Bousley*, 523 U.S. at 623). Petitioner has demonstrated neither cause nor prejudice regarding his prosecutorial misconduct claim. Petitioner's related claim regarding ineffective assistance of counsel for failing to call Cedric Hestle as a material witness will be more fully discussed below.[5]

### B. RELITIGATION

Further, an argument previously addressed and rejected on direct appeal may not be relitigated through a § 2255 Motion, absent exceptional circumstances such as an intervening change in the law. *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996) ("because this issue was fully and fairly presented on direct appeal, petitioner could not now use a § 2255 petition to relitigate it, absent an intervening change in the law."). Because no such circumstance exist in this case, Petitioner's argument relating to challenges under *Miller-El* and *Batson* should be denied.[6]

---

[5]*See infra* pp. 9-10.

[6]Although, Petitioner states that his counsel was ineffective for failing to raise these challenges, he cannot show cause and prejudice regarding counsel because the arguments failed on

7

On direct appeal, the Sixth Circuit held

> In this case, Defendant, an African-American himself, established a prima facie case for race discrimination. The prosecutor countered with a facially-valid, wholly neutral explanation for his two peremptory challenges of veniremen Young and Rogers. Lastly, the district court accepted the prosecutor's explanations and found Defendant had not proven purposeful discrimination. On appeal, the only argument Defendant presents to establish clear error is that the prosecutor eliminated all the African-Americans in the venire and Defendant is a member of the excluded group. Thus, according to Defendant, the prosecutor's explanations for his strikes cannot be considered credible. The district court, however, found otherwise. Because we do not view the prosecutor's explanations as "implausible or fantastic," we cannot say the court's finding was clearly erroneous. "A peremptory challenge is not unconstitutional solely because it has a racially disproportionate impact. Some proof of racially discriminatory intent or purpose is required in order to show a violation of the Equal Protection Clause." *United States v. Jackson*, 347 F.3d 598, 605 (6th Cir.2003). In this case, Defendant has offered no such proof.

*Hestle*, 2004 WL 1800903, at *3. Thus, the issue has been clearly addressed and rejected.

It is noted that Petitioner relies on the concurring opinion of Circuit Judge Moore. Although Judge Moore questions the conduct of Petitioner's trial counsel, this does not provide a basis for an exception under *Dupont* because the majority opinion found otherwise.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's separate claim of ineffective of assistance of counsel is properly before this court, even though it was not raised on direct appeal. "Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *United States v. Foster*, 376 F.3d 577,

---

direct review; thus, it would be impossible to show prejudice. Thus, Petitioner's argument that "Petitioner's conviction would have been reversed on appeal," (Dkt. #81, page 4), is completely without merit because facts clearly show that it was not. Further, Petitioner "cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal." *Clemons v. United States*, 2005 WL 2416995, at *2 (E.D. Tenn. 2005) (citing, *see e.g.*, *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir.1996).

8

593 (6th Cir. 2004) (quoting *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.1992); *see also Massaro v. United States*, 538 U.S. 500 (2003) (ineffective-assistance-of-counsel claims may and should be brought in 28 U.S.C. § 2255 proceeding)). To show that he was denied the effective assistance of counsel under federal constitutional standards,

> [f]irst, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### 1. Failure to Call Material Witness

Petitioner alleges that his counsel was ineffective for failing to call his co-defendant and brother, Cedric Hestle. Yet after reviewing statements made by Cedric Hestle, it is clear that he would be an easily impeached witness. Thus, counsel would not be ineffective in failing to call Cedric Heslte.

On November 17, 2006, Cedric Hestle signed an Affidavit stating: "If called to testify at my bother's trial, I would have testified that my bother was not involved in the charged offenses. If called to testify at any current proceeding, I will testified that my bother was not involved in the charged offenses." (Affidavit filed January 5, 2007, Dkt. #97, page 2).

The government has provided ATF's Affidavit of Cedric Hestle dated March 20, 2002. (Government's Response filed December 14, 2006, Exhibit 3, Dkt. #96). In this document Cedric Hestle clearly states that the drugs were both his and Gerald Hestle's and the firearms belonged to Gerald Hestle. The December 14, 2006, Affidavit of Cedric Hestle states:

9

> My brother and I started selling cocaine together, we would buy about one oz of crack cocaine at a time and then we would package it into 20's and then sell it. . . . On March 19, 2002 my brother had packaged all the cocaine that was found when the Police raided my house.

*Id.* at 1. Further, the Affidavit states:

> The two guns that were found in my house my brother had bought them about 2 weeks ago. My brother put the rifle my closet [sic]. The handgun that was found might have my fingerprints on it because I checked the gun out when my brother brought it over to my house.

*Id.* at 2. Further, another Affidavit that was not signed by Cedric Hestle because he indicated that he "didn't want to talk anymore," states that he "made the verbal statement I sell cocaine for my brother." (Government's Response filed December 14, 2006, Exhibit 4, Dkt. #96).

Had any reasonable defense counsel been aware of Cedric Hestle's March 20, 2002, affidavit such counsel would have strongly advised against calling him. With Gerald Hestle's claim that he lied to the agents to protect his brother Cedric Hestle, the government would argue to the jury that – now that Cedric Hestle had pled guilty – this was Cedric Hestle's reciprocal "kindness" of lying to protect his brother Gerald Hestle.

It is clear that Cedric Hestle would be confronted with his prior inconsistent statement that he admitted to the AFT agents that he and his brother had been selling cocaine for some time. Even more damning to Gerald Hestle is that even if Cedric Hestle paid for the cocaine at the Ferris Avenue address on March 19, 2002, so it was "his," Cedric Hestle admitted to the ATF agents that on that date Gerald Hestle had "packaged all the cocaine that was found" by the ATF agents. This is all that is needed to convict Gerald Hestle with an 841(a)(1) violation of "posses[ing] with the intent to distribute, a controlled substance." Additionally, any reasonably defense counsel would know that if Cedric Hestle were called as a defense witness, the Assistant

U.S. Attorney would question Cedric Hestle on Cedric Hestle's March 20, 2002, affidavit statement that the two guns found at the Ferris Avenue address (which included the Ruger .22 caliber semi-automatic pistol) had been in the possession of Gerald Hestle when he purchased them and when he transported them to the Ferris Street address. This might be the strongest evidence available on the Count II Felon in Possession charge on which Petitioner was acquitted.

If Cedric Hestle admitted the truth of his March 20, 2002, affidavit this would be direct and damning evidence that Gerald Hestle was guilty of Counts I and II. If he denied the truth of his March 20, 2002, affidavit then this affidavit testimony would be hearsay and not admissible as direct evidence of the pending charges because it would be proffered for the truth of its content on the drugs and the guns. Yet, even if the March 20, 2002, affidavit is hearsay if admitted for the truth of its contents, it is not hearsay if admitted solely to prove that Cedric Hestle made a sworn statement on March 20, 2002, (which he now contends was false) that is directly contradictory to his trial testimony. Because his credibility would be at issue, the government could impeach him with the prior affidavit and likely lay the necessary foundation for admitting the affidavit as impeachment evidence of a prior inconsistent statement under FRE 801(d)(1). This would gravely undermine Cedric Hestle's credibility that the drugs were his and his denial that he had any knowledge that the Ruger .22 caliber semi-automatic pistol had been possessed by Petitioner.

It was determined that no evidentiary hearing was needed on this case to determine whether Petitioner told his defense attorney to call Cedric Hestle as a witness. For purposes of this report, it will be assumed that Petitioner did so. Assuming this, there is no way – given

11

Cedric Hestle's March 20, 2002, affidavit – that refusing to call him was ineffective assistance of counsel.

Even if the defense counsel did not know about Cedric Hestle's damning March 20, 2002, affidavit inculpating Petitioner in both Counts I and II, he would have known that the "First Gerald lies to protect Cedric and now Cedric lies to protect Gerald" argument would make the testimony of Cedric Hestle risky and likely futile. In such a case making a tactical decision not to call Cedric Hestle would not be ineffective assistance of counsel under the first prong of *Strickland*. If the defense counsel was aware of the damning March 20, 2002, affidavit the reasonableness of refusing to call Cedric Hestle as a witness is even stronger.

Yet, even if this Court were to assume that defense counsel was ineffective in refusing to call Cedric Hestle, thus satisfying prong I of *Strickland,* there is no reasonable probability that the outcome would have been different, or if so the difference might have been a conviction of Petitioner on Count II also. Thus, even if we assume Petitioner has satisfied prong I of *Strickland*, his as failed to satisfy prong II of *Strickland* by showing prejudice.

    **2.**    ***Blakely***

Petitioner argues that his appellate counsel was ineffective for failing to raise a challenge pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). On the verdict form, the jury clearly marked "Guilty" as to Count I and found the following quantity: "50 grams or more of cocaine base in the form of crack cocaine" (Dkt. #30). Petitioner was then sentenced to life on Count I (Dkt. #38). *Blakely* followed the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). "This case requires us to apply the rule we expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)." *Blakely v. Washington*, 542 U.S. at 2535. In *Apprendi*, the Supreme Court held that

any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be proven beyond a reasonable doubt. Here the statutory maximum for Petitioner was life. In any event, in the present case the quantity was proven beyond a reasonable doubt because the jury specifically made a finding as to the amount of cocaine base. Thus, there was no error under *Apprendi* and its progeny.

Petitioner also alleges that appellate counsel was ineffective in failing to a writ of certiorari as instructed, relying on *Wilkins v. United States*, 441 U.S. 468, 468 (1979). In *Wilkins*

> The petitioner states that he asked his court-appointed lawyer to file a timely petition for certiorari and that in September 1977 he received an assurance from the lawyer that this request had been honored. In July 1978, the petitioner wrote to the Clerk of this Court to inquire about his case and learned that no such petition had ever been filed. He then wrote several letters to his lawyer, but the letters were never answered. All these factual allegations are supported by the petitioner's affidavit and by the affidavits of his wife and his minister.

*Id.* Petitioner references Exhibit C in support of his argument as well; however, the only attachment to his brief is a copy of the Sixth Circuit Court of Appeals decision on direct review. This is insufficient. In addition, unlike the Petitioner in *Wilkins*, there is no evidence of correspondence presented to prove the allegations that he instructed counsel to file a petition for certiorari. Petitioner provides no argument in terms of what should have been raised to warrant any grounds for seeking Supreme Court review.

### 3. Life Sentence

Petitioner *incorrectly* asserts that his life sentence was pursuant to 18 U.S.C. § 3559(c). He was sentenced to life pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) and 851, not § 3559(c). (Judgement filed December 12, 2002, Dkt. #38). As Respondent correctly argues:

A prior felony drug-offense under § 841 will trigger the enhanced statutory penalties regardless of whether it was a trafficking offense. *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998), cert. denied, 525 U.S. 1086 (1999) (distribution element not required); *United States v. Rolfe*, 997 F.2d 189, 190-91 (6th Cir.), cert. denied, 510 U.S. 956 (1993) (two-year state "misdemeanor" for attempted possession of cocaine a prior felony drug-offense conviction as the state treated it as a felony under its habitual offender statute).[7]

Thus, there is no relevant argument pursuant to § 3559(c) for the undersigned to review.

## V. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Petitioner's § 2255 Motion be **DENIED.**

Pursuant to Rule 72(b) of the Fed. R. Civ. P. and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Either party may respond to another party's objections within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

**DATED**: May 30, 2007                   s/Steven D. Pepe
Flint, Michigan                                United States Magistrate Judge

---

[7]Respondent's Brief at pages 10-11.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Mark C. Jones, David A. Koelzer,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): n/a.

s/James P. Peltier
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov
