UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD DEVAUGHN HESTLE,

          Petitioner,

v.

UNITED STATES OF AMERICA,

          Respondent.

_____/

Case No. 05-40245
Criminal Case No. 02-50030-1

Sean F. Cox
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**MOTION TO VACATE SENTENCE FOLLOWING REMAND**

## I.    PROCEDURAL HISTORY

Petitioner Gerald Devaughn Hestle was originally indicted on May 8, 2002,

and charged with possession with intent to distribute 50 grams or more of cocaine

base and with being a felon in possession of firearms. His trial on those charges

commenced on August 14, 2002, and ended on August 16, 2002, with a guilty

verdict on the drug charge and a not-guilty verdict on the firearm charge. He was

sentenced to a mandatory life sentence on December 12, 2002, based on the drug

amounts involved in the offense and his two prior convictions for felony drug

offenses.

A direct appeal was taken from his conviction and the Court of Appeals

affirmed his conviction in an opinion issued August 11, 2004. One of the two

issues raised on direct appeal was a claim that the trial prosecutor had improperly exercised peremptory challenges as to two African-American jurors and had violated the principles contained in *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986) in that regard. The Court of Appeals identified the three part test established in *Batson* for determining if a defendant's rights have been violated as including: (1) the defendant must make a *prima facie* showing that a peremptory challenge was exercised based on race, (2) the prosecutor must then offer a race-neutral basis for striking the juror, and (3) the trial judge must then determine whether the defendant has shown purposeful discrimination on the part of the prosecutor. (Dkt. 65, Pg ID 612). The Court of Appeals went on to hold that petitioner had established a *prima facie* case for race discrimination but that the prosecutor had come forward with race neutral reasons for striking the two African-American jurors that the trial judge found credible. The appellate court considered those reasons and determined that they were not "implausible or fantastic" and therefore the trial court's finding the strikes were not racially motivated was not "clearly erroneous." The Court noted that "[s]ome proof of racially discriminatory intent or purpose is required in order to show a violation of the Equal Protection Clause [and] Defendant has offered no such proof." (Dkt. 65, Pg ID 613). Judge Moore wrote a concurring opinion agreeing that petitioner had failed to meet his burden of showing "racially discriminatory intent or purpose" with respect to the prosecutor's peremptory

challenges to the two African-American jurors but commented that defendant's trial counsel failed to contest the "reasons asserted by the prosecution in even the slightest of ways" and specifically stated that counsel failed to point out that another juror, not an African-American, was the same age as one of the African-American jurors who was struck for his "immaturity" by the prosecutor.

Petitioner filed the present motion to vacate pursuant to 28 U.S.C. § 2255 on August 1, 2005, alleging ineffective assistance of counsel in several areas of conduct by trial counsel. (Dkt. 74). The motion was eventually referred to Magistrate Judge Steven D. Pepe for report and recommendation. (Dkt. 91). Judge Pepe issued a report and recommendation on May 30, 2007 concluding, among other things, that the ineffective assistance claim regarding the *Batson* issue was an attempt to re-litigate an issue that had already been decided by the Court of Appeals on direct appeal which is not allowed by *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). In a footnote, Judge Pepe also found that petitioner's ineffective assistance of counsel claim on this issue failed because petitioner could not show "prejudice" based on the decision of the Court of Appeals on direct appeal. (Dkt. 98, Pg ID 791-92, n. 6). Although this footnote did not include a cite to *Strickland v. Washington*, 466 U.S. 668 (1984), it appears that Judge Pepe was referring to the two-part test from *Strickland*, which requires a demonstration of performance by counsel below constitutional standards **and** prejudice from that

deficient performance.  *Id.* at 687.  The district judge adopted the report and

recommendation on November 2, 2007, and denied the motion to vacate.  (Dkt.

103).

Petitioner appealed the ruling denying his motion to vacate.  (Dkt. 105).  The

Court of Appeals subsequently concluded that the decision of the district court

finding that the *Batson* claim in the § 2255 petition was an attempt to re-litigate the

issue raised on direct appeal was error.  The basis of the decision was that the

merits of the *Batson* claim (the issue decided on direct appeal) is "analytically

distinct" from the ineffective assistance of counsel claim raised in the § 2255

petition.  The case was remanded to the district court on June 2, 2011.  (Dkt. 117).

Following remand, the case was referred to the undersigned for a report and

recommendation on August 4, 2011.  (Dkt. 122).  On September 8, 2011, a

telephone status conference was conducted.  During the status conference, it was

determined that no additional evidence would be offered by either side and a

briefing schedule was established.  A supplemental brief was filed by petitioner on

October 19, 2011.  (Dkt. 124).  The government filed a response on October 26,

2011.  (Dkt. 125).  Oral argument was conducted on January 5, 2012.  Petitioner

filed a post-hearing brief on January 26, 2012 (Dkt. 128) and the government filed

its post-hearing brief on February 2, 2012.  (Dkt. 129).

This matter is now ready for report and recommendation.  For the reasons set

forth below, the undersigned **RECOMMENDS** that petitioner's motion be

**DENIED**.

## II.    RELEVANT FACTS

The transcript of the trial in this case reflects the following:

JUROR # 120: My name is Leo Rogers , I reside in Flint and I have resided here for 34 years. I was born in (inaudible). My age is 66, my occupation is I'm retired. My marital status is - -

THE COURT: What - - you retired from what type of 23 work , sir?

JUROR #120: I was working in the public school system.

THE COURT: As a teacher or some other –

JUROR #120: Teacher.

THE COURT: A teacher? Alright.

JUROR #120: Ah, I forgot where I was.

THE COURT: Your marital status.

JUROR #120: Divorced. Your Honor , I have two children ages 32 and 34. They work for Huron -- I don't know what position. Um, I'm a member of MEA. I have been in the military service, I was in the Marine Corps. I served there for four years, my duties in the Marine Corps varied, I was infantry, everything, personnel, my rank was sergeant. I didn't do any military police work but I did serve in guard duty, and I didn't do anything in court marshall proceedings.

(Dkt. 48, Pg ID 127-128).

JUROR #96: My name is Lawrence Young. I reside in Flint, Michigan. I've resided in Flint, Michigan for 21 years. I was born in

Flint Michigan. My age is 21. My occupation is (inaudible). Marital status is, not married. I have no children. I completed high school. I don't belong to any clubs or groups and I have not been in the military.

(Dkt. 48, Pg ID 130).

JUROR #110: My name is Morgan Cook. I reside in South Lyon. I have lived there 2 years. I was born in 12 Farmington Hills. My age is 21. My occupation is I'm a full time student at Oakland University. Um, I am not married. I do not have any kids. Um, I'm going into my senior year at Oakland University. Um, and I belong to (inaudible).

(Dkt. 48, Pg ID 132).

MR . JONES: * * * Two things , I would respectively ask the Court to inquire on. In the first seat is Mr. Rodgers. I noted that on his qestionnaire [sic] he answered yes to -- "Do you have any mental or physical infirmaties [sic] which would hinder you if called as a juror?" I notice that he periodically became confused and some times and at some times then at other times he wasn't thinking clearly. I'd like the Court to ask about that.

(Dkt. 49, Pg ID 251).

THE COURT: -- to be fair and impartial? Alright. I can ask that, the whole panel that. Then I'll question Mr. Rodgers, and then we'll have Ms. Sood come up here.

MR. JONES: Do you want to bring Mr. Rodgers up? Or do you want -- however you –

THE COURT : I can do it

MR. JONES: I thought it would be more courtsey [sic] to him to bring him up and --

(Dkt. 49, Pg ID 253)

THE COURT: * * * Alright. And then I have a question -- first of all -- let's see, Mr. Rodgers, in the third seat --

JUROR #120 : Mm-hmm.

THE COURT: Would you come up here to the sidebar. There's a question that I want to put to you here.
If the attorneys would step up. Excuse me.

(SIDE BAR CONFERENCE)

Alright. Again, this conference is being conducted outside the presence of the other members of the panel.
Mr. Rodgers, there's a question about yourself. I'm looking at your questionnaire here.

JUROR #120: Mm-hmm.

THE COURT: You're a teacher, middle school teacher. Is that right?

JUROR #120: Yes.

THE COURT: And you've indicated in Question Number 19 it says, "Do you have any physical or mental infirmity which would impair your capacity to serve as a juror?"
And you answered, "Yes."

JUROR #120: I did?

THE COURT: Yes , you certainly did. You checked "Yes" there.

JUROR #120: Well, at the time maybe. I was going to a chiropractor on my back.

THE COURT: Oh.

JUROR #120: I'm still going.

THE COURT: Oh, you have a sore back?

JUROR #120: Yeah. I've still got a bad back.

THE COURT: How much does that distract you?

JUROR #120: I have no idea. It all depends on how long I have to sit.

THE COURT: Well , you have to sit here as long as -- at anyone time for possibly about two hours; and then we have a recess.

JUROR #120: At one time I can do it two hours, I believe.

THE COURT: We'll have a recess every two hours, at least. I'll virtually guarantee you that.
And that's what you were talking about if you said "Yes" earlier, you were talking about this back condition that a chiropractor was treating you for?

JUROR #120: Right. I still go.

THE COURT: All right. I think that answers our question. You can return to your seat. I wanted to make sure that you didn't have any problems or something of that sort that would interfere with your service. Thank you.

JUROR #120: No.

THE COURT: You can go back to your seat.

JUROR #120: Uh-huh.

MR. JONES: Okay.

(Dkt. 49, Pg ID 254-256).

MR. VAN NORMAN: * * * - - we feel compelled to object to the Court's dismissal of Juror-former Juror Young [Juror Number 96,

Lawrence Young]. As the Court may take note, my client is African-American. There were two in the entire pool, both of which were selected, and one of which now remains. And the only other person of color was excused for cause, in fact the Court may recall that given the sparsity of African-Americans in the pool, I feel compelled to make a record, as far as this issue goes.

THE COURT: Mr. Jones?

MR. JONES: If you remember, Mr. Young was by far the youngest person of the male gender on the panel from a chronological standpoint.
Secondly, it strikes me, he was very immature.
Number three, I thought he took attire to a new level wearing his footbal [sic] jersey and things like that. I think that was another indication of how very much immature he was and for that set of reasons it struck me that he should be removed from the panel.

THE COURT: Additional comment?

MR. VAN NORMAN: No. Thank you.

THE COURT: Alright, well, obviously the - - both parties have considerable latitude in exercising their peremptory challenges; except for, of course, they can't be utilized to eliminate minority persons for a jury for no cognizable reason other than that of their race.
Mr. Jones has outlined a number of factors which I think legitimately can be taken into account in the exercise of their discretions.
Your objection to his exercising peremptory challenge involving Mr. Young is overruled. That leaves, of course, the juror in the 3rd seat still on the jury who is an African-American.

MR. VAN NORMAN: Very well.

(Dkt. 49-2, Pg ID 264-265).

THE COURT: * * * This was somewhat anticipatory, but I anticipate there may be an objection on round five, on the

Government sixth and last peremptory challenge to the ultimate twelve jurors. As they exercise that challenge, in seat number three, seat 120, Leo Rodgers, I'm just anticipating this since you objected to the challenge involving another African-American juror, you'd be objecting. So I thought I'd get right to the point here before I sent anybody out of the courtroom.

MR. VAN NORMAN: The Court's experience in accuracy and in it's anticipation, because that's what I was about to do.

Yes, Your Honor, given the absolute minimal amount of African-Americans, in particular minorities in general in the pool, I think I would object to excusing Mr. Rodgers.

We had some additional voir dire of him at the bench here where he discussed a health issue, and indicated he had no problem serving. I think his answers were very straightforward. His background is an education where they, as I recall from grade school, they harp on American and flag and the Fifth Amendment and the system and how right it is.

So I think he'd be a very fair and capable juror and wouldn't let the fact that my client is African-American weigh unduly in the favor of the defense either.

So for all those reasons I place that objection on the record.

THE COURT: And, Mr. Jones?

MR. JONES: Your Honor, regarding Mr. Rodgers, while he was speaking originally, he struck me as being confused. There were pauses in his responses. He was unable to say what his children were doing.

I know that he had checked off that he had some type of physical infirmity or something that would prevent him from sitting. And whether that really –

MR. VAN NORMAN: Yes, but --

MR. JONES: The interesting part from my standpoint was when he was brought up, the Court asked him whether or not he had checked it off, and he said no. Again, supporting my –

THE COURT: He expressed surprise that he had said "Yes" to that question.

MR. JONES: Yes, he did.

It strikes me as consistent with my other observation that he was confused. But, yes, he came forward and indicated that as far as that goes it strikes me that there's some problem with his ability to think clearly.

And I've practiced before this Court for 14 years, the Court which even minority jurors, and specifically African-Americas [sic] on the panel on a regular basis of the course of dozens of trials. So, in terms of -- from a general standpoint the Court knows that I will do that.

It strikes me, though, that he's confused at times. I think, relative to him, he's not a youngster, I believe -- sixty-six, but people age differently. And I don't think that he's as alert and capable as a lot of other 66-year-olds sitting on juries.

MR. VAN NORMAN: Watching some of the other jurors, some of the younger ones, some of the ones that are probably a little older than Mr. Young but younger than Mr . Rodgers have been not always attentive either. So I don't know if that's an issue.

As far as his confusion when he was brought up here, I think his answers were very clear, in fact a little bit more select, smaller group , which is what it will be in deliberations, so if he's allowed to continue.

And as much as I respect Mr. Jones, I disagree with his position, and I think Mr. Rodgers should be allowed to serve.

THE COURT: Anything you want to add?

MR. JONES: Well, Your Honor, counsel is talking about attention. I'm talking about mental clarity, which is different issue there.

He struck me -- he does strike me as easily confused. That is my professional observation of the man as I've watched him during this voir dire process. Even as simple as not recalling that he had checked off the infirmity thing, which is an important question. The Court had to follow up with that to inquire what that was about. Yes,

he came around and explained that, but it seems to me that is a pretty clear type of thing, which is whether or not he can sit there adequately or not. That's not a hard question. If he's having a hard time with that, he may have a hard time following all these witnesses testifying, all these exhibits floating around the courtroom, cross-examination, following jury instructions and
things of that sort.

And that's no different from striking any other juror that I thought was easily confused. And, in fact, I concur that other persons with instructions and what not to be confused or not is a - - which is an independent factor.

THE COURT: Anything further?

MR. VAN NORMAN: No. Thank you.

THE COURT: Well, the business of the situation where, unfortunately is not an easy one -- however, as Mr. Jones has outlined, in my estimation, the circumstances that would justify his exercising his challenge, however other than the race of the juror involved, it's too bad that there is now an all Caucasian jury.
I think he's within his rights in exercising his discretion when he used this challenge. The gentlemen of course he did -- on the questionnaire he said that he had a physical condition that would impair his service. And when he was questioned at sidebar, he said that he had a back problem; he was under treatment for that back problem.

And when I asked him about sitting for long periods of time, he was somewhat -- somewhat noncommittal about that, until I told him that he probably wouldn't have to sit for more than two hours at a time. He said he thought he would be able bear up under that situation.

But I think that's a consideration. He did indicate that it's a serious enough problem that he checked on the questionnaire that this would impair his service.

So I believe that the Government can exercise discretion, although I feel that I would consider a rather unfortunate situation.

So the objection's overruled.

(Dkt. 49-2, Pg ID 267-271).

Report and Recommendation
Motion to Vacate Sentence under § 2255
*United States v. Hestle*; Case No. 05-40245

## III.  STANDARD OF REVIEW

In order to maintain a successful ineffective assistance of counsel claim,
petitioner must prove that counsels' performance fell below an objective standard
of reasonableness and counsel's deficient performance prejudiced petitioner in the
sense that it resulted in an unreliable or fundamentally unfair outcome in the
proceeding.  *Strickland*, 466 U.S. at 687-88.  The failure to satisfy one prong of the
*Strickland* test negates the court's need to consider the other.  *Ivory v. Jackson*, 509
F.3d 284, 294 (6th Cir. 2007).

## IV.  ARGUMENTS OF THE PARTIES

Petitioner argues that his Equal Protection Rights were violated based on
trial counsel's failure to subject "the prosecutor's explanations [for striking the two
African-American jurors] to any meaningful testing" in violation of the *Batson*
requirements.  (Dkt. 124, Pg ID 857).  More specifically, petitioner contends that
trial counsel did not challenge the prosecutor's explanation for striking juror
Young (an African-American) by comparing him to juror Cook and also made no
comparison between juror Rogers (an African-American) and any other of the
jurors in the venire that were not challenged by trial counsel.  (Dkt. 124, Pg ID
858, 862).

The government contends that petitioner has not demonstrated what trial
counsel could have done, but did not do, under these circumstances that would

establish either a deficient performance or resulting prejudice in the *Strickland* sense. With respect to juror Young, the government contends that a comparison with juror Cook would not have shown a substantially comparable situation such that an inference of racial motivation could be drawn from the prosecutor's strike of Young, and not Cook. The government also contends that petitioner has not shown any conduct with respect to juror Rogers that trial counsel could have undertaken, but did not, under these circumstances that demonstrates a deficient performance or prejudice. (Dkt. 125, Pg ID 873-78).

During oral argument on this petition, a number of questions were raised regarding the concept of *Strickland* "prejudice" in this context and the parties were given an additional opportunity to comment on that issue in writing. Petitioner filed a supplemental brief arguing that a presumption of prejudice should apply in this case and, if there is no presumption of prejudice, then petitioner contended that he had shown that there was a "reasonable probability the result [of his trial] would have been different" if trial counsel had made a better *Batson* argument. (Dkt. 128). The government responded to petitioner's argument by contending that there is no presumption of prejudice in these circumstances and that nothing petitioner has submitted demonstrates that the trial judge would have ruled differently as to the *Batson* challenges if trial counsel would have made some other argument.

## V. ANALYSIS AND CONCLUSIONS

This case involves the intersection of two major cases of federal jurisprudence. *Batson*, which relates to the prohibition of using race to excuse jurors from trials, and *Strickland*, which relates to the constitutional guaranty of effective assistance of counsel, are the cases that control the outcome of this controversy.

Petitioner claims he was denied the effective assistance of counsel by virtue of his trial counsel's failure to properly challenge the prosecutor's exercise of peremptory challenges to two African-American jurors during his trial. In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial

balance between defense and prosecution that the trial was rendered unfair and the

verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

This language highlights the Supreme Court's consistent view that the Sixth

Amendment right to counsel is a safeguard to ensure fairness in the trial process. In

*Lockhart v. Fretwell*, 506 U.S. 364 (1993), the Court clarified the meaning of

"prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging
> prejudice must show "that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable." . . . Thus, an analysis focusing
> solely on the mere outcome determination, without
> attention to whether the result of the proceeding was
> fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted). The standard by which a court

reviews counsel's performance is highly deferential, and there is a strong

presumption counsel's conduct was within the "wide range of reasonable

professional assistance." *Strickland*, 466 U.S. at 689.

Here, the *Stickland* analysis must be considered in the context of a claim of

error with respect to the a *Batson* controversy which arose during petitioner's trial.

Normally, for a claimant to show a violation of the *Batson* requirements, he must

first establish a *prima facie* case of racial discrimination. If the *prima facie* case of

racial discrimination is established, the party exercising the peremptory challenge

must proffer a race-neutral explanation for the peremptory challenge. The race-

neutral explanation does not have to be "'particularly persuasive, or even plausible, as long as it is neutral.'" Once the race-neutral explanation is offered, the party claiming the *Batson* violation must demonstrate that the offered explanation is merely a pretext for a racial motivation. *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001). Completely subjective factors such as body language and demeanor are permissible race-neutral factors justifying a peremptory challenge and the permitted reasons may be "'nothing more than a trial lawyer's instincts about a prospective juror ... so long as they are the actual reasons for the prosecutor's actions.'" *Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009). The "ultimate burden of *persuasion* regarding racial motivation rests with and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

In an attempt to show that trial counsel's performance was deficient, petitioner here contends that counsel should have done a "comparative juror analysis" between Lawrence Young, the African-American juror excused by the prosecution on a peremptory challenge, and Morgan Cook, a juror who apparently was not an African-American, who was not excused by the prosecution. Petitioner cites *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) in support of this argument.

During *voir dire*, Juror Young provided information as to his background.

He was 21, the transcript does not identify where he was employed[1], he was not married, had no children, completed high school, did not belong to any clubs or groups and had not been in the military. (Dkt. 48, Pg ID 130). When trial counsel objected to the government's peremptory challenge of juror Young, the judge turned to AUSA Jones and sought a response. AUSA Jones indicated juror Young was "by far the youngest person of the male gender on the panel from a chronological standpoint," and that "he was very immature." Additionally, the prosecutor said juror Young "took attire to a new level wearing his footbal [sic] jersey and things like that [and] that was another indication of how very much immature he was and for that set of reasons [AUSA Jones thought] he should be removed from the panel." (Dkt. 49-2, Pg ID 265). The judge invited defense counsel to further comment on the reasons AUSA gave for the challenge to juror Young but he declined to comment. The judge noted that parties have "considerable latitude in exercising their peremptory challenges [but cannot] eliminate minority persons for a jury for no cognizable reason other than that of their race." (Dkt. 49-2, Pg ID 265). The judge went on to state that "Mr. Jones has outlined a number of factors which I think legitimately can be taken into account in the exercise of their discretion" and overruled the objection to the peremptory

---

[1] The transcript shows an "inaudible" response as to the nature of juror Young's occupation. (Dkt. 48, Pg ID 130).

challenge by the government.  *Id*.

In an attempt to show a deficiency in the performance prong of the *Strickland* ineffective assistance of counsel test, petitioner argues that trial counsel did not adequately challenge the prosecutor's reasons for the peremptory challenge of juror Young at the third step of the *Batson* analysis.  Petitioner does not challenge the reasons given as not being race-neutral.  Rather, the claim is that trial counsel did not show that the reasons given were pretext and that the exercise of the peremptory challenge was purposeful discrimination, which is the third step of the *Batson* analysis.  To bolster this claim, petitioner argues that trial counsel did not make a comparison between juror Young and juror Morgan Cook, a "white" juror that petitioner contends was similar to juror Young but not excused by the prosecutor.  Petitioner also argues that the trial judge did not make a finding as to whether juror Young was immature or that his clothing was inappropriate as proffered by the prosecutor in giving his reasons for the peremptory challenge.  (Dkt. 124, Pg ID 858-59).  Petitioner cites *Snyder v. Louisiana*, 552 U.S. 472 (2008) in support of this argument.

In *Snyder,* the defendant had been convicted in state court of murder and sentenced to death.  On review, the Supreme Court considered a *Batson* challenge to the trial proceedings.  An African-American juror had been excused on a peremptory challenge by the prosecutor and the defense objected.  The prosecutor

gave two reasons for excusing the African-American juror: (1) the juror "looked very nervous," and (2) the juror had a schedule conflict that caused the prosecutor to believe that he might want to "go home quickly" and might "come back with a lesser verdict." *Snyder*, 552 U.S. at 478. The defense counsel "disputed" the reasons given and the trial judge simply stated "[a]ll right, I'm going to allow the challenge. I'm going to allow the challenge."

The Supreme Court determined that the trial judge had made no finding as to the demeanor of the prospective juror's nervousness so the court could not "presume that the trial judge credited the prosecutor's assertion that [the prospective juror] was nervous." *Id*. at 479. The second justification for excusing the African-American juror was the claimed conflict in the juror's schedule which was belied by the fact that other identified white jurors in the venire had conflicts that were recognized as being at least as compelling, if not more so, than the African-American juror's, and they were not excused by the prosecutor. That reason was deemed implausible by the court and a "pretextual explanation" which gave "rise to an inference of discriminatory intent." *Id*. at 484-85. The court reversed the decision of the state court after finding that the pretextual nature of the "conflict" justification gave rise to an inference of discriminatory intent and the "nervousness" justification could not be relied on as an independent race-neutral basis for the strike in the "absence of anything in the record showing that the trial

judge credited the claim that [the prospective juror] was nervous [and therefore] the record does not show that the prosecution would have pre-emptively challenged [the prospective juror] based on his nervousness alone."[2]

It is not perfectly clear how *Snyder* supports petitioner's argument regarding the claim of ineffective assistance of counsel with respect to the performance prong of *Strickland*. In order to be Constitutionally effective, counsel's performance must be at or above "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Certainly the performance of counsel must be considered in light of the prevailing professional norms. *Padilla v. Kentucky*, 130 S.Ct. 1473, 1482 (2010). *Snyder* was decided in 2008 and petitioner's trial was in 2002, so it is difficult to measure the constitutional effectiveness of petitioner's trial attorney based on a case decided six years after his trial took place. *Snyder* dealt with *Batson* issues, but not in the context of an ineffective assistance of counsel claim. *Snyder* found

---

[2] The Supreme Court suggested, citing *Hunter v. Underwood*, 471 U.S. 222, 228 (1985), that the proponent of the strike might be able to show that, even if a discriminatory motive may have been a factor in the decision to exercise the peremptory challenge, if the strike would have exercised based on an independent race-neutral factor anyway, the proceedings might be found to be constitutional. However, the Court had not previously applied that principle of law in the *Batson* context and "there [was no] realistic possibility that this subtle question of causation could be profitably explored further on remand at his late date, more than a decade after petitioner's trial." 552 U.S. at 485-86. The Sixth Circuit has discussed, but not determined with certainty, whether it is necessary to show that a racial motive was the sole factor in exercising a strike, or merely one of several factors, in order for a *Batson* violation to be shown. *Akins v. Easterling*, 648 F.3d 380, 390-92 (6th Cir. 2011).

error in the state court proceeding, but the error was occasioned by the failure of the trial judge, not the defense attorney. One might assume that petitioner here is arguing that counsel was deficient in that he did not push the trial judge to make the findings that *Snyder* seemed to require and that raises the question as to what *Snyder* does require. Petitioner argues that *Snyder* requires the trial judge to make a factual finding that the proffered justification for the peremptory challenge is accurate. Here, that would seem to have required the trial judge to make a factual finding that juror Young was "immature" as the prosecutor had contended.

The undersigned believes that petitioner's suggested interpretation of *Snyder* extends it beyond what was intended. The third step of the *Batson* analysis remains essentially the same as when it was first established, that is "the challenging party, who always bears the ultimate burden of persuasion, must show that the explanation [for the race-neutral challenge] is merely a pretext for a racial motivation." *Braxton*, 561 F.3d at 459. The "critical question" in determining if the challenging party has proved "'purposeful discrimination ... is the persuasiveness of the prosecutor's justification for his peremptory strike.'" *Id.*, quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003). "'[T]he issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible.'" *Id.* "'Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations

are; and by whether the proffered rationale has some basis in accepted trial strategy.'" *Id.* An additional credibility factor that was asserted by the prosecutor here was the 14 years of past experience this trial judge had with the prosecutor and what was proffered to be a prior lack of racial motivation for exercising peremptory challenges. (Dkt. 49-2, Pg ID 268-69).

*Snyder* did not alter the *Batson* calculus such that trial judges are, in all instances, required to conduct hearings on the "immaturity" or "nervousness" of prospective jurors, although that is one method of determining the credibility of the proponent of the strike.[3] If the trial judge were to find that the prosecutor's race-neutral reasons for the peremptory challenge were credible based on other factors, then no factual findings are necessary. The court's determination must be based on "all evidence with a bearing on" the plausibility of the prosecution's proffered explanation and clearly some of that evidence could include a side-by-side comparison of African-American jurors who were struck and white jurors who were not. *United States v. Torres-Ramos*, 536 F.3d 542, 559-60 (6th Cir. 2008). The significance of that issue here is whether petitioner has demonstrated a performance deficiency based solely on trial counsel's failure to request that the

---

[3] In his dissenting opinion in *Snyder*, Justice Thomas noted "we have never suggested that a reviewing court should defer to a trial court's resolution of a *Batson* challenge only if the trial court made specific findings with respect to each of the prosecutor's proffered race-neutral reasons." 552 U.S. at 487.

judge make findings on the record as to the immaturity of prospective juror Young.

The record demonstrates that after the *Batson* objection was raised as to prospective juror Young, the prosecutor gave race-neutral reasons for the strike and, although defense counsel did not comment on the reasons further, the trial judge, after noting that peremptory challenges cannot be exercised for race-based reasons, stated: "Mr. Jones has outlined a number of factors which I think legitimately can be taken into account in the exercise of [his] discretion." (Dkt. 49-2, Pg ID 265). While perhaps not the model of judicial findings as to the credibility of the prosecutor's proffered reasons for exercising a peremptory challenge as to juror Young, the Court of Appeals, on direct appeal, viewed the language as sufficient to demonstrate that the trial judge had "accepted the prosecutor's explanations and found Defendant had not proven purposeful discrimination." (Dkt. 65, Pg ID 613-14). The failure of trial counsel to request a finding by the trial judge as to the trial judge's opinion of the maturity of juror Young, where the trial judge found that the reasons given by the prosecutor for excusing juror Young were "legitimate," does not state a performance deficiency under the *Strickland* ineffective assistance of counsel test. The trial judge made a finding that seemed to satisfy the requirements of *Batson*, in the eyes of the Sixth Circuit, and the vast majority of authority relied on by petitioner for a more detailed finding by the trial judge is contained in cases decided after petitioner's

trial.

Petitioner's other argument in support of his claim of ineffective assistance of counsel, with respect to the performance of counsel, is that trial counsel did not do a juror comparison with respect to prospective juror's Young or Rogers. Regarding Young, there was one other juror who had a similar background - Morgan Cook. The prosecutor excused juror Young who was a 21-year old male, apparently had a job of some sort[4], was not married, had no children, had a high school degree, did not belong to any groups and had not served in the military. (Dkt. 48, Pg ID 130). The prosecutor did not excuse juror Cook who was 21 years old, was a full-time college senior, not married, did not have any children and did belong to some sort of organization.[5] (Dkt. 48, Pg ID 132). The proffered reasons for excusing juror Young were that he was the youngest male, "by far," on the panel, he was "very immature," and he wore a football jersey to the court. The wearing of the football jersey, which could reasonably be viewed as casual attire, was acknowledged by the prosecutor to be evidence of immaturity rather than a separate reason for excusing juror Young. (Dkt. 49-2, Pg ID 265).

---

[4] The transcript does not specifically identify what the nature of Mr. Young's employment was due to an apparent inaudible response by Mr. Young. (Dkt. 48, Pg ID 130).

[5] Again, the transcript of the trial does not include the identity of the club or organization that Morgan Cook belonged to due to an apparent inaudible response. (Dkt. 48, Pg ID 132).

The government argues that, while there are some similarities between jurors Young and Cook, there are critical differences. These differences, according to the government, are so significant that the prosecutor striking Young, but not Morgan, should not give rise to the inference that the strike of Young was purposeful discrimination. Young was described as the youngest **male** on the panel which certainly could lead to the conclusion that Morgan was female. Morgan was a college senior and she was a member of some organization which, as argued by the government, indicates "she was usefully occupied and reasonably mature." (Dkt. 125, Pg ID 876).

Assuming for purposes of argument that the failure of trial counsel to request that the trial judge make a comparison between juror Young and juror Cook was a performance deficiency under *Strickland*, the possible prejudice resulting from that performance deficiency has to be analyzed in order to determine if petitioner is entitled to any relief. With respect to actual prejudice, petitioner argues that there is a reasonable probability that "but for counsel's unprofessional errors," the result of the jury selection proceeding would have been different. (Dkt. 128, Pg ID 928). On the other hand, the government argues that petitioner has not shown that if this comparison had been made the result of the proceeding would have been different. The government contends that if the comparison had been made it "would not have contradicted any fact stated by the prosecutor, or cast

significant aspersions on his claim that he was challenging juror Young on the basis of apparent immaturity. While defense counsel could have made such a comparison, it would have been unlikely to change the district court's ruling." (Dkt. 125, Pg ID 876).

Petitioner's statement of the definition of prejudice is generally accurate. Petitioner has the burden to show that there is a "reasonable probability" that if his attorney had not erred "the result of the proceeding would have been different." A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In this context, the "proceeding" would have to be viewed as the *Batson* challenge and, therefore, in order to find "prejudice," there has to be a reasonable probability that the result of the *Batson* challenge would be different if a side-by-side comparison of jurors Young and Cook had been done.

The available "evidence" and the reasonable inferences that can be drawn from that evidence, lead to the conclusion that Young was a 21-year old male, employed in some fashion, had a high school education, was not involved in any clubs or organizations and wore informal clothing to court. That evidence also leads to the conclusion that Cook was a 21-year old female, was in her senior year of college, was involved in a club or organization and did not wear clothing that was arguably inappropriate for court. Petitioner bears the burden of proof in

demonstrating that there is a reasonable probability the judge would have sustained the *Batson* objection if the side-by-side comparison was made and, in the view of the undersigned, petitioner has not met that burden. While similar in some respects, jurors Young and Cook are sufficiently different in ways that would reasonably reflect on their respective level of maturity and those differences are sufficient to find that if the side-by-side comparison had been made there is not a reasonable likelihood that the trial judge in petitioner's case would have ruled any differently on the *Batson* challenge than he did at the time of petitioner's trial. The level of education, the involvement in the community, the nature of the attire, and perhaps gender, are all factors that distinguish Young and Cook, and are factors that have some connection to maturity. The issue for the trial judge is not so much what his assessment of the respective levels of maturity for these two jurors was, but whether the judge could properly determine that the prosecutor's reasons for excluding juror Young was not pretext for racial motivation. As long as the judge concludes that the prosecutor's race-neutral reasons for exercising the peremptory challenge were credible, and not a pretext for racial motivation, the trial judge should have denied the *Batson* challenge at trial by petitioner. Petitioner has not met his burden to establish that he was prejudiced by the failure of counsel to conduct a side-by-side comparison of Young and Cook; that is, petitioner has not demonstrated that there is a reasonable likelihood that the trial

judge would have ruled any differently than he did at the time had such a comparison been performed.

Petitioner also contends that trial counsel was constitutionally ineffective for not further contesting the prosecution's peremptory challenge of juror Rogers. Juror Rogers was 66 years old, a retired teacher, had served in the military and was divorced. (Dkt. 48, Pg ID 128). After first stating his background, the prosecutor asked that further inquiry be made because Mr. Rogers seemed "confused." (Dkt. 49, Pg ID 251). The court inquired further regarding problems that juror Rogers had identified in his questionnaire. (Dkt. 49, Pg ID 255-56). Counsel objected to the peremptory challenge as to juror Rogers and the prosecutor proffered that the peremptory challenge was exercised because Rogers was confused. (Dkt. 49-2, Pg ID 268). Defense counsel argued that juror Rogers was no more confused than younger jurors present and that Rogers' response to questions at side bar were "very clear." (Dkt. 49-2, Pg ID 269). The trial judge noted a number of factors which could "impair [juror Rogers'] service" and approved the government's peremptory challenge as to Rogers. (Dkt. 49-2, Pg ID 271).

With respect to juror Rogers, petitioner argues that "there is again no real argument or comparison to any of the twelve remaining (white) jurors [and that counsel should have] pursued [his argument] further or asked for a substantive hearing." (Dkt. 124, Pg ID 862). However, petitioner does not identify any other

white juror who was selected and had similar issues to juror Rogers. Without specifying something in particular that counsel should have done, but did not, petitioner fails to state either a performance deficiency or prejudice under *Strickland*. While petitioner argues that juror Rogers would have made a good juror, that is not the test under *Batson* and particularly so when considered under the *Strickland* standards for ineffective assistance of counsel. The mere academic possibility that something else could have been done does not overcome the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Petitioner also argues that prejudice need not be shown under these circumstances because *Batson* errors are "structural" and prejudice is presumed. In *United States v. Kimbrel*, 532 F.3d 461, 468-69 (6th Cir. 2008), the case relied on by petitioner for this contention, the court examined, on direct appeal, an allegation of *Batson* error regarding a government challenge to the defendant's peremptory challenge of a prospective juror. In finding reversible error, the court rejected consideration of a harmless-error analysis stating that such an analysis only applies to "trial errors," which may be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Structural errors, however, affect the "'entire conduct of the trial from beginning to end'" and are not subject to a harmless-error analysis.

*Id.* quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991). *Kimbrel* noted that Sixth Circuit precedent established that *Batson* errors are structural errors. 532 F.3d at 469, relying on *United States v. McFerron*, 163 F.3d 952, 955-56 (6th Cir. 1998). The government opposes petitioner's argument in this regard.

Petitioner correctly states the significance of *Kimbrel,* but *Kimbrel* only applies once the Court has arrived at the destination of a *Batson* violation. The *Strickland* component of the present analysis requiring the Court to navigate that route before applying *Kimbrel* and *Strickland* means that prejudice has to be demonstrated. To petitioner's credit, he pointed to *Davidson v. Gengler*, 852 F.Supp. 782, 785-88 (W.D. Wis. 1994), on which the government relies in opposing petitioner's argument. The *Davidson* court noted that there are some instances, such as the complete absence of counsel, where prejudice must be presumed in a *Strickland* analysis, but that "the failure to raise a *Batson* objection does not suggest an equally high probability of the existence of prejudice [in part because] all *Batson* objections [do not] have merit." *Id.* "Applying *Strickland* to the jury selection process would require a criminal defendant to prove that if the *Batson* objection had been made there was a 'reasonable probability' it would have been sustained and that the trial judge would have taken curative action before the trial began." *Id.*

More recently, the Eleventh Circuit addressed an ineffective assistance of

counsel claim in a petition under 28 U.S.C. § 2254 where trial counsel had failed to object to the partial closing of the courtroom during the testimony of a victim in a child molestation case.  In *Purvis v. Crosby*, 451 F.3d 734 (11th Cir. 2006), the court ruled that while the improper closing of a courtroom during a trial was a "structural" error it "is one thing to recognize that structural errors and defects obviate any requirement that prejudice be shown on direct appeal and rule out an application of the harmless error rule in that context [but it] is another matter entirely to say that they vitiate the prejudice requirement for an ineffective assistance claim." *Id*. at 740.  This decision was based on the court's conclusion that *Strickland* carved out only three exceptions to the prejudice requirement and those exceptions are "actual or constructive denial of counsel altogether, certain types of state interference with counsel's assistance, and conflicts of interest." *Id*. at 741.  None of those exceptions apply to these circumstances.  The Sixth Circuit, in an unpublished decision, determined that prejudice has to be established to show a *Batson* violation on a § 2255 petition.  *Taylor v. United States*, 279 Fed.Appx. 368; 2008 WL 2224805 (6th Cir. 2008).  Prejudice will not be assumed in this analysis.

## VI.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that petitioner's motion be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 23, 2012                     s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on April 23, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: David A. Koelzer and Robert W. Haviland, AUSA, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Gerald Devaughn Hestle, ID# 30023-039, USP BIG SANDY, P.O. Box 2068, Inez, KY 41224.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov